IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.   CRIMINAL NO. 1:11cr103-HSO-JMR-002

JAVIER MOLINA and
JOSE LUIS SANTOS-GARCIA

**DEFENDANT JOSE LUIS SANTOS-GARCIA'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS
<u>BASED ON AN ILLEGAL STOP AND SUBSEQUENT ILLEGAL DETENTION</u>**

**I. Introduction**

Defendant Santos-Garcia is charged in a superseding three-count indictment with violations of Section 371 and 554, Title 18, United States Code, and Sections 2778(b) and (c) of Title 22, United States Code. The indictment alleges that Santos-Garcia conspired and attempted to export firearms and defense articles into Mexico from the United States. The evidence supporting the indictment was obtained from an illegal stop of Santos-Garcia on August 31, 2011, and from subsequent events, namely the global positioning satellite (GPS) tracking device placed upon Defendant Santos-Garcia's vehicle, without a warrant, as a direct result of the illegal stop. The warrantless placement of the GPS tracking device is the subject of a separate motion to suppress; the illegal stop, purportedly for a cracked windshield violation, and the unlawful detention resulting therefrom, are the subject of this motion to suppress.

The evidence procured in connection with this illegal stop is the "fruit" which must be suppressed – the stop was illegal, the case law considers that illegality to be a "tree" that can "poison" later "fruit," the physical evidence seized and the statements obtained even if later

derived from a purportedly independent source would never have been discovered without the alleged illegality, and the "good faith" exception to the exclusionary rule does not apply to this illegal stop under 5th Circuit precedent. Finally, and relatedly, Santos-Garcia was illegally detained subsequent to the illegal stop because the detention lasted longer than was necessary to effectuate the purpose of the stop.

Accordingly, Defendant Santos-Garcia respectfully moves this Court for an order suppressing all physical evidence seized and any statements obtained in connection with the unlawful stop and detention of Defendant Santos-Garcia.

**II. Factual Background**

Defendant Santos-Garcia has, for a number of years owned a small, black 1994 Ford Ranger truck with North Carolina license plate AAL 198. On August 31, 2011, he was driving this truck along Interstate 10 en route to Houston, Texas, from his home in North Carolina. His wife accompanied him on the drive. Behind the truck, he was pulling a trailer of four wheelers/motorcycles which he had been hired to deliver to Houston. The Ford truck did have a crack across the approximately bottom 10-25% of the windshield on that date, and the crack remains on the windshield of the vehicle still. The crack does not obscure the view of the driver to the road.

On August 31, 2011, shortly after noon that sunny day, a deputy with Jackson County Sheriff's Office approached Defendant Santos-Garcia's truck from behind while both were driving along Interstate 10, westbound. The deputy twice or thrice pulled along the south side (left lane) of Santos-Garcia's vehicle to situation himself approximately even with the vehicle. After the second or third approach, the deputy pulled Santos-Garcia over, and, once stopped,

approached the vehicle on the passenger-side from behind. Santos-Garcia was the driver of the vehicle, and he readily handed the deputy all requested documentation and responded to all questions, to the extent he was capable, given the severe language barrier. The deputy told Santos-Garcia he had been pulled over because of a cracked windshield violation. At the conclusion of this questioning and some visual observation of the vehicle, its trailer and the contents therein, and after calling in the license plate and driver's/passenger's information, the deputy noted aloud (back in his vehicle) that did not "get a response" from the defendant. He further noted that it did not appear that any parts of the vehicle had tool marks indicating any tampering. In short, at this time, nothing was observed by the deputy to give rise to reasonable suspicion to detain Santos-Garcia further. Nonetheless, *after* receiving the license plate and driver's license verification, the deputy called in another JCSO deputy for additional questioning. This questioning eventually resulted in a search of the vehicle and seizure of items contained therein.

It is the fruits of this unlawful stop of Santos-Garcia and the subsequent unlawful detention that Santos-Garcia seeks to suppress.

**III. Analysis**

Preliminarily, Santos-Garcia has standing to assert a Fourth Amendment violation and to acquire to remedial application of the exclusionary rule. Santos-Garcia owns the vehicle stopped and was the target of the stop. Further, because possession of the evidence seized is a necessary element of the crime(s) for which he was indicted, he does not have to prove standing to raise a Fourth Amendment violation. Santos-Garcia has standing to challenge the search and seizure of the vehicle and the statements obtained as a result of the illegal stop.

## A. The Stop for a "Cracked Windshield" was Illegal

The JCSO deputy stopped Santos-Garcia for a purported violation (a cracked windshield) that is not codified under Mississippi law as a traffic violation. The JSCO deputy had no authority to stop the vehicle to inspect the windshield as only the Mississippi Highway Patrol has the authority to evaluate, to enforce and to collect fines on inspection violations. Any other statute stretched beyond its language to apply to a cracked windshield should be struck as unconstitutionally vague.

Mississippi has no statute criminalizing a driver from operating a vehicle that has a cracked windshield, regardless of how large or small the crack may be. Other Mississippi statutes dealing with the operation and equipment in automobiles include provisions requiring that automotive parts be properly maintained, but there is no such provision for the windshield itself. Notably, some states do have specific statutes regarding cracks in windshields. Other states, like Mississippi and Alabama, do not. Mississippi law does provide some general requirements concerning the inspection of vehicle equipment and mechanical conditions. Miss. Code Ann. § 63-13-3 (1972) provides

> No person shall drive or move on any highway any motor vehicle, . . . unless the equipment upon any and every said vehicle is in good working order and adjustment as required in this chapter, and said vehicle is in such safe mechanical condition as not to endanger the driver or other occupant or any person upon the highway.

The Chapter does not articulate any requirements for windshields to be considered within "good working order and adjustment," however. Miss. Code Ann. § 63-13-21 (1972) does provides the rules to be followed by a *patrolman* in stopping a motor vehicle on the roads and highways.

Specifically, that section states:

> (1) Members of the *Mississippi Safety Patrol* may at any time, upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the driver of such vehicle to stop and submit such vehicle to an inspection and such test with reference thereto as may be reasonably appropriate. . . . Such authority, however, shall be limited to the inspection of said vehicle for mechanical defects and shall not authorize the search of the vehicle or the occupants thereof for any other purpose without due process of law.
> (2) In the event such vehicle is found to be in unsafe condition, or any required part or equipment is not present or is not in proper repair and adjustment, the officer shall give a written notice to the driver and shall send a copy to the department.

Id. § 63-13-21 (emphasis added). That statute expressly authorizes on the Mississippi Highway Patrol to stop a vehicle for a possible inspection violation. The JSCO deputy had no authority to stop Santos-Garcia for the cracked windshield on this basis. That statute specifically provides a very limited scope of authority to stop and inspect the vehicle – to test whether the equipment presents an unsafe condition, and it gives authority only to patrolmen.

In fact, in Santos-Garcia's case, there is no evidence that the windshield obscured the driver's view or posed a risk of breakage. There is no other evidence that the windshield was unsafe to the driver, passenger, or others on the road. Practically, people get and keep cracks in their windshield daily. In a state as poor as Mississippi, it is reasonable to conclude from the lack of specific legislation on the subject that the legislature recognized and accepted that its citizens cannot afford to repair every crack in their windshields. By not adopting any statutes on the subject, our legislature, like the legislature of other states like Alabama, declined to put such a financial burden on Mississippians. In fact, the legislature appears to accept the possibility of

cracks, without condemning them as illegal, by the language of Miss. Code Ann. § 63-7-59, which is entitled, "Windows and window glass generally; windshield wipers; tinted or darkened windows prohibited unless certified; additional fee for inspection stations conducting tests of light transmittance of motor vehicle windows; exceptions; penalties; public awareness program." Nothing in that statute addresses cracks in windshields. It is not the Court's role to confer on Mississippians such an obligation by so broadly interpreting this statute. To that extent, Santos-Garcia would contend that the statute is unconstitutionally broad.

While Mississippi does not appear to have any cases on point, both Alabama and Florida courts have recently addressed the question – considering facts that are all fours with the facts and circumstances of Santos-Garcia's case. *See, e.g., J.D.I. v. State,* CASEMAKER 070811 ALCCA, CR-10-0534 (July 8, 2011, Ala. Crim. App.) and *Hilton v. State*, 961 So.2d 284 (Fl. 2007). In both cases, the Courts determined that reliance on the purported statutory violation to justify the stop of the vehicles was a mistake of law that could not provide reasonable suspicion for the traffic stop that resulted in the arrests.

### 1. Santos-Garcia's stop is subject to *Terry v. Ohio*

Because a routine traffic stop is a limited form of seizure, it is analogous to an investigative detention; therefore, a traffic stop is be governed by the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* sets up a two-prong test of the reasonableness of investigatory detentions and weapons searches. First, the Court must decide whether the detention was justified at its inception. Second, the officer's actions must be reasonably related in scope to the circumstances which justified the interference in the first place. At both stages, the reasonableness of the officer's suspicions is judged by an objective standard taking the totality of

the circumstances and information available to the officers into account. *Id.* Having a cracked windshield on Santos-Garcia's vehicle does not violate any law; therefore, the JCSO deputy should not have stopped him.

### 2. Principles of Statutory Interpretation and Fifth Circuit Precedent Guide and Support the Court Declaring the Stop Illegal

No Mississippi statute support a finding that the stop of Santos-Garcia was legal. In *United States v. Miller*, 146 F.3d 274, 278 (5th Cir. 1998), the Fifth Circuit noted that "[i]t should go without saying that penal statutes are to be strictly construed." Further, "criminal statutes must be strictly construed to avoid ensnaring behavior that is not clearly proscribed." *United States v. Bridges*, 493 F.2d 918, 922 (5th Cir. 1974) . This longstanding principle of statutory interpretation is affirmed in *United States v. Boston & M. RR Co.*, 380 U.S. 157 (1965), where the Supreme Court stated: "[A] criminal statute is to be construed strictly, not loosely. Such are the teachings of our cases from *United States v. Wiltberger*, 5 Wheat. 76, 5 L.Ed. 37 [ (1820) ], down to this day. Chief Justice Marshall said in that case: 'The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.' *Id.*, p. 95. 'The fact that a particular activity may be within the same general classification and policy of those covered does not necessarily bring it within the ambit of the criminal prohibition. *United States v. Weitzel*, 246 U.S. 533 [ (1918) ] .'

Moreover, one "is not to be subjected to a penalty unless the words of the statute plainly impose it, " *Keppel v. Tiffin Savings Bank*, 197 U.S. 356, 362 (1905). "[W]hen choice has to be

made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C.I.T. Credit Corp.*, 34 4 U.S. 218, 221-222 (1952); *United States v. Campos-Serrano*, 404 U.S. 293, 297 (1971).

Mississippi state law does not prohibit driving a vehicle with a cracked windshield. Thus, the JCSO deputy was mistaken as to the law of the State of Mississippi. Thus, the stop was improper. Under the Fourth Amendment, an officer's mistake of law cannot provide the objective grounds for reasonable suspicion or probable cause required to justify a traffic stop. *United States v. Miller*, 146 F.3d 274 (5th Cir. 1998); *United States v. Lopez-Valdez*, 178 F.3d 282 (5th Cir. 1999).

In Lopez-Valdez, an officer stopped the defendant for a broken taillight. The plastic cover of the taillight was broken, but the bulb itself was intact. However, because of a previous case regarding the same statute ten years earlier, the Fifth Circuit noted that "no well-trained Texas police officer could reasonably believe that white light appearing with red light through a cracked red taillight lens constituted a violation of traffic law. " *Id.* at 289. Therefore, the traffic stop was not "objectively reasonable." *Id.* at 289 n. 6. In addition, the Fifth Circuit held that the good-faith exception to the exclusionary rule should not be extended to cover an officer's mistake of law. *Id.* at 289.

In *United States v. Miller*, 146 F.3d 274, 278 (5th Cir. 1998), the traffic stop at issue in Miller was based on the defendant's prolonged use of his left turn signal without turning left or moving into the left lane. *Id.* at 276. The officer believed this was an infraction and pulled the defendant over. After obtaining consent for a search, the officer found marijuana in Miller's

vehicle. The Fifth Circuit held that, because the defendant's conduct was "not a violation of Texas law, no objective basis for probable cause justified the stop of Miller." *Id.* at 279. Thus, the stop was unconstitutional. *See also Hilton v. State*, 961 So.2d 294-95 (noting that federal courts have determined that "an officer's mistake of law as to what constitutes a traffic violation, no matter how reasonable, cannot provide objectively reasonable grounds for reasonable suspicion. . . . [and] in strict 'mistake of law' cases, the conduct that the officer believed to be in violation of the law was not statutorily prohibited").

The traffic stop of Santos-Garcia was improper and illegal. The stop was not based on a reasonable suspicion that Santos-Garcia violated the law or had been involved in criminal activity. Because the stop was improper, the evidence procured in connection to the stop should be suppressed.

### B. The Illegal Stop is a "Tree" that has "Poisoned" later acquired "Fruit"

The Prosecution illegally obtained both physical evidence and statements from the illegal stop of Santos-Garica. A string of events followed this illegal stop, many of which also produced evidence to be used against Santos-Garcia at trial. The illegal stop violates Santos-Garcia's judicially recognized Fourth Amendment right to privacy. The physical intrusion amounts to a search. The exclusionary rule bars the introduction at trial any evidence seized in violation of Santos-Garcia's Fourth Amendment rights. *Wong Sun v. United States*, 371 U.S. 471 (1963).

### C. Under current 5th Circuit precedent, The Good Faith Exception to the Exclusionary Rule does not apply

Only in specified circumstances does the exclusionary rule not apply. This case is not one of those circumstances, and the good faith exception is, therefore, not applicable. A mistake

in the law, even if made by a seasoned officer in presumed good faith, does not avoid the application of the exclusionary rule and preclude the suppression of the fruits of that illegal stop. Stated another way, the good faith exception does not apply to justify the stop if the police officer does not objectively observe a traffic violation. *United States v. Miller*, 146 F.3d 274 (5th Cir. 1998); *United States v. Lopez-Valdez*, 178 F.3d 282 (5th Cir. 1999). Thus, the evidence should be suppressed.

### D. The Burden is on the Prosecution To Prove the Stop was Constitutional

Generally, on a Motion to Suppress, the defense has the burden of proof. But in this case, where no warrant was obtained, the Government must prove the constitutionality of the stop by a preponderance of the evidence. The Jackson County Sheriff's Department's investigatory stop of Santos-Garcia is subject to the *Terry v. Ohio* two-part test. In the Fifth Circuit, for the stop to be constitutional, the Government must prove (1) that the officer's actions are justified at the inception of the stop, and (2) that the subsequent actions were reasonably related in scope to the stop.

### E. Santos-Garcia was Illegally Detained because the Detention Lasted Longer than Necessary to Effectuate the Purported Purpose of the Stop

The deputy unconstitutionally continued questioning after the purported purpose of the stop was finished. Santos-Garcia contents the purported purpose of the stop was illegal and, therefore, all statements made and evidence collected in connection therewith should be suppressed. He further argues that the deputy further offended Santos-Garcia's rights by

continuing to question Santos-Garcia and, in fact, calling in another officer to question Santos-Garcia, which, based on the video, appears to occur long after the computer checks on the vehicle and person came back clean.

Generally, a temporary traffic stop, if legitimately made, is constitutionally permissible. Santos-Garcia concedes that law enforcement may ask questions and conduct warrants and wants searches. *United States v. Shabazz,* 993 F.2d 431, 436 (5th Cir. 1993). But once the computer checks come back clean, continued questioning is unconstitutional. Before the purpose of the stop finished, the deputy must have new reasonable suspicion to detain Santos-Garcia further. By his own admission, the deputy had none. Even in the totality of the circumstances, there was nothing to suspect Santos-Garcia of wrongdoing. In a multitude of cases where evidence and statements were not suppressed, courts within this District have articulated information that could amount to reasonable suspicion. Those indicia of reasonable suspicion are not present in this case until long after the purpose of the initial stop concluded. Absent an articulated, reasonable suspicion of criminal activity, the deputy impermissibly and illegally detained Santos-Garcia.

**IV. Conclusion**

The JCSO deputy had no lawful basis for stopping Santos-Garcia on August 31, 2011. The physical evidence seized and the statements obtained in connection with this illegal stop are the "fruit" which must be suppressed – the stop was illegal, the case law considers that illegality to be a "tree" that can "poison" later "fruit," the physical evidence seized and the statements obtained even if later derived from a purportedly independent source would never have been discovered without the alleged illegality, and the "good faith" exception to the exclusionary rule

does not apply to this illegal stop under 5th Circuit precedent. To avoid suppression of the evidence, the Prosecution must prove the Constitutionality of the stop. Finally, and relatedly, Santos-Garcia was illegally detained subsequent to the illegal stop because the detention lasted longer than was necessary to effectuate the purpose of the stop. Accordingly, Defendant Santos-Garcia respectfully moves this Court for an order suppressing all physical evidence seized and any statements obtained in connection with the unlawful stop and detention of Defendant Santos-Garcia.

Respectfully submitted this the 13th day of April, 2012.

ALYSSA DONOVAN FARRELL
Attorney for Defendant Santos-Garcia

By: /s/Alyssa Donovan Farrell

ALYSSA DONOVAN FARRELL
MSB#102614
134 Rue Magnolia
Biloxi, MS 39530
Phone: (228) 374-8004
Fax:    (228) 435-8008
Email: Alyssa.d.farrell@gmail.com
Attorney for Defendant Santos-Garcia

CERTIFICATE OF SERVICE

I, Alyssa Donovan Farrell, do hereby certify that I have filed the forgoing with the Clerk of the Court using the ECF system which will send notification of such filing to all interested parties.

By: /s/Alyssa Donovan Farrell
ALYSSA DONOVAN FARRELL
*Attorney for Defendant*